**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS**

Plaintiff,

v.

**U.S. DEPARTMENT OF JUSTICE,** *et al.*,

Defendants.

Case No. 19-2847 (TFH)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Katie Townsend
Adam A. Marshall
Gunita Singh
THE REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
Email: ktownsend@rcfp.org
Email: amarshall@rcfp.org
Email: gsingh@rcfp.org

*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 4

I.   The FBI and Criminal Division have failed to conduct adequate searches. ..................... 4
   A.   The Criminal Division unlawfully failed to search for electronic communications....... 4
   B.   The FBI unlawfully limited its search to the Central Records System. ......................... 6

II.   EOUSA has failed to establish that it conducted an adequate search for records. ........... 10

III.   The FBI is unlawfully withholding the names of the two FBI agents who questioned
Carmody........................................................................................................................... 12
   A.   Michael Eldridge's identity is in the public domain. ...................................................... 13
   B.   The FBI has proffered inadequate and speculative privacy interests that are not
   supported by any evidence. ................................................................................................. 13
   C.   The public interest in knowing who violated DOJ policy overcomes any privacy
   interests that may exist. ....................................................................................................... 15

CONCLUSION........................................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Aguiar v. Drug Enforcement Admin.*, 865 F.3d 730 (D.C. Cir. 2017) ..................................... 2, 12

*Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667 (D.C. Cir. 2016) ........................................................................................................................... 14

*Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504 (D.C. Cir. 2011) ......................... 2

*Bartko v. Dep't of Justice*, 898 F.3d 51 (D.C. Cir. 2018) ............................................................ 16

*Boyd v. Criminal Div. of Dep't of Justice*, 475 F.3d 381 (D.C. Cir. 2007) ................................... 9

*Campbell v. Dep't of Justice*, 164 F.3d 20 (D.C. Cir. 1998) .................................................. 9, 10

*Cottone v. Reno*, 193 F.3d 550 (D.C. Cir. 1999) ........................................................................ 13

*Davis v. Dep't of Justice*, 968 F.2d 1276 (D.C. Cir. 1992) ......................................................... 13

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989) ................. 5

*DiBacco v. U.S. Army*, 795 F.3d 178 (D.C. Cir. 2015) ....................................................... 2, 9, 11

*Fischer v. Dep't of Justice*, 596 F. Supp. 2d 34 (D.D.C. 2009) .................................................. 13

*GTE Sylvania v. Consumers Union*, 445 U.S. 375 (1980) ............................................................ 3

*Jett v. Fed. Bureau of Investigation*, 139 F. Supp. 3d 352 (D.D.C. 2015) ................................... 8

*Liounis v. Krebs*, No. 18-5351, 2019 WL 7176453 (D.C. Cir. Dec. 19, 2019) ........................... 11

*McClanahan v. Dep't of Justice*, 204 F. Supp. 3d 30 (D.D.C. 2016) ............................................ 8

*Mobley v. Cent. Intelligence Agency*, 806 F.3d 568 (D.C. Cir. 2015) ........................................... 6

*Morley v. Cent. Intelligence Agency*, 508 F.3d 1108 (D.C. Cir. 2007) ................................... 2, 12

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) ............................................. 15

*Nation Magazine v. Customs Serv.*, 71 F.3d 885 (D.C. Cir. 1995) ............................................... 5

*Oglesby v. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990) .................................................... 7, 8, 11

*Prop. of the People, Inc. v. Dep't of Justice*, 405 F. Supp. 3d 99 (D.D.C. 2019) ....................... 10

*Reporters Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 877 F.3d 399 (D.C. Cir. 2017) ............................................................................................................ 2, 9, 11, 12

*Reporters Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, No. CV 15-1392 (RJL), 2020 WL 1324397 (D.D.C. Mar. 20, 2020) ............................................................. 14

*Shapiro v. Dep't of Justice*, 944 F.3d 940 (D.C. Cir. 2019) ......................................................... 7

*Stern v. Fed. Bureau of Investigation*, 737 F.2d 84 (D.C. Cir. 1984) ......................................... 16

*Tax Reform Research Grp. v. Internal Revenue Serv.*, 419 F. Supp. 415 (D.D.C. 1976) ............. 15

*Valencia-Lucena v. Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999) .......................................... 8, 11

*Wilbur v. Cent. Intelligence Agency*, 355 F.3d 675 (D.C. Cir. 2004) ........................................... 9

**Statutes**

5 U.S.C. § 552 .................................................................................................................... *passim*

**Other Authorities**

Courtney Douglas, *FBI failed to follow Justice Department's news media guidelines when agents questioned San Francisco freelancer*, Reporters Committee for Freedom of the Press (July 7, 2020), https://perma.cc/L4EH-ELZC ...................................................................... 13, 14

**Rules**

Fed. R. Civ. P. 56 ................................................................................................................. 1

**Regulations**

28 C.F.R. § 50.10 ..................................................................................................... 3, 5, 15

## INTRODUCTION

As set forth in Plaintiff's cross-motion for partial summary judgment, ECF No. 16, this case concerns three requests submitted by the Reporters Committee for Freedom of the Press ("RCFP" or "Plaintiff") for records related to the federal government's involvement in the questioning of journalist Bryan Carmody ("Carmody") during a law enforcement raid of his home and office.   Plaintiff challenges: (1) the sufficiency of the searches conducted by the U.S. Department of Justice Criminal Division ("Criminal Division") and the Federal Bureau of Investigation ("FBI"), (2) the sufficiency of the evidence submitted by the Executive Office for United States Attorneys ("EOUSA") with respect to its search for relevant records, and (3) the FBI's withholding of the names of the FBI agents who questioned Carmody.

The material facts are undisputed.   There is no dispute that Plaintiff's requests sought emails and text messages, and it is undisputed that the FBI and Criminal Division have refused to search for those records.  Defs.' Resp. to Pl.'s Statement of Material Facts as to Which there is No Genuine Issue, ECF No. 20-5 ("Defs.' Resp. to Pl.'s SMF"), ¶¶ 79, 91, 93, 115.  There also is no dispute that the FBI definitively possesses responsive emails—examples of which Plaintiff introduced as evidence, *id*. ¶¶ 100, 101, 106, 107.  Further, there is no dispute that FBI agents questioned Carmody, *id.* ¶ 71, and there is no dispute that one of those agents is Michael Eldridge, *id.* ¶ 72, who has been publicly identified as an FBI agent for more than six years, *id.* ¶ 73.  There is no dispute that the FBI did not search the San Francisco Field Office, *id.* ¶ 94 or the email accounts of Special Agent Eldridge, *id.* ¶ 102, or the numerous other FBI email accounts that Plaintiff has proven house responsive records, *id.* ¶¶ 91, 93, 109.  For these reasons, alone, Plaintiff's cross-motion as to the FBI and Criminal Division should be granted.  Fed. R. Civ. P. 56(a).

1

The Criminal Division's and FBI's refusal to even *search* for records *expressly* requested by Plaintiff is patently unlawful. *See Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) ("An agency is required to perform more than a perfunctory search in response to a FOIA request."). And the FBI's contention that Plaintiff should be required to "submit a new FOIA request," Defs.' Reply at 10, to obtain the email records Plaintiff already specifically asked for in the FOIA request at issue is not only unlawful, but absurd. *See* Marshall Decl., ECF No. 16-3, Ex. 3. The FBI's argument fundamentally misconstrues its obligations under FOIA. *See* 5 U.S.C. § 552(a)(3); *Reporters Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 877 F.3d 399 (D.C. Cir. 2017) (setting forth standards as to adequacy of an agency's search). Plaintiff is not required to engage in duplicative and unnecessary rounds of FOIA requests and litigation; the FBI and Criminal Division are required to search for and produce the records Plaintiff requested.

While the EOUSA has conducted some searches and (belatedly) provided some information as to how those searches were conducted, it has yet to disclose the search terms or results of any searches (if any occurred) of the United States Attorney's Office for the Northern District of California ("USAO/NADC"). This is fundamentally at odds with the standards set forth by the D.C. Circuit, and precludes summary judgment in the EOUSA's favor. *See, e.g.*, *Reporters Comm.*, 877 F.3d at 403; *DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015); *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1122 (D.C. Cir. 2007); *Aguiar v. Drug Enforcement Admin.*, 865 F.3d 730, 738 (D.C. Cir. 2017).

Finally, the FBI persists in unlawfully withholding the names of the agents who questioned Carmody, even though at least one of them is already publicly known and has been publicly identified as an FBI special agent for years. Not only are the privacy interests identified by the

FBI purely speculative and unsupported by any evidence, but the public's interest in obtaining information about the Department of Justice's failure to comply with its own News Media Policy, 28 C.F.R. § 50.10, in connection with the FBI's questioning of Carmody overrides any privacy interest that might exist.

The FBI attempts to downplay the powerful public interest here by claiming the News Media Policy was not violated because the raid on Carmody's home and office was carried out pursuant to state-issued search warrants. But that is not (and has never been) Plaintiff's argument. The violation of the News Media Policy stemmed from the FBI's *questioning* of Carmody (which the FBI does not dispute occurred) without the authorization of the Attorney General. *See* 28 C.F.R. § 50.10(f)(1). And, to the extent the FBI's position is that the News Media Policy had no application to its agents' attempts to elicit Carmody's confidential source information during what has been found to be an illegal search of his home and office, *see* Pl.'s Mem., ECF No. 16-1, fn. 10, there is a strong public interest in access to agency records that discuss the FBI's basis for that position.

When Congress enacted FOIA, its "attention . . . was primarily focused on the efforts of officials to prevent release of information in order to hide mistakes or irregularities committed by the agency." *GTE Sylvania v. Consumers Union*, 445 U.S. 375, 385 (1980) (citation omitted). Plaintiff's requests seek to fulfill that statutory guarantee. For the reasons set forth in its opening brief and herein, the Court should: (1) deny the Criminal Division's and EOUSA's motion for summary judgment; (2) deny FBI's motion for summary judgment as to the adequacy of its search for records and its withholdings pursuant to Exemptions 6 and 7(C); and (3) grant Plaintiff's cross-motion for partial summary judgment.

## ARGUMENT

**I.     The FBI and Criminal Division have failed to conduct adequate searches.**

**A.** The Criminal Division unlawfully failed to search for electronic communications.

While acknowledging that Plaintiff's request expressly seeks electronic messages, the Criminal Division admits that it "did not undertake a search of emails, text messages, or other electronic messaging services." Defs.' Reply at 4; *see also* Defs.' Resp. to Pl.'s SMF ¶ 115. The purported justification for its failure to do so is that the "PSEU is not involved in the review or execution of state search warrants" and that the PSEU did not receive a consultation or authorization request. Defs.' Reply at 4. These rationales fail to address FOIA's standards, and are unavailing for at least three reasons.

First, whether DOJ followed its own policy has no bearing on whether the Criminal Division is required to search for records specifically requested by Plaintiff. RCFP did not ask for records to be produced *only if* the News Media Policy was complied with, nor can an agency unilaterally inject such a requirement. The agency is "bound to read [the request] as drafted [and] not as agency officials might wish it was drafted." *Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 960 F. Supp. 2d 101, 183 (D.D.C. 2013) (cleaned up). In any event, Plaintiff's request did *not* ask for records *only* concerning the News Media Policy: it also sought communications between certain entities containing specific keywords, including the Privacy Protection Act, "shield," and "leak." Pl.'s SMF ¶ 79; Marshall Decl. Ex. 1. The Criminal Division's attempt to avoid the clear, necessary consequence of its admitted failure to search for the records requested by the Reporters Committee by injecting misguided arguments about the presumption of regularity and the scope of the News Media Policy, *see* Defs.' Reply at 4, must fail. Plaintiff requested specific electronic records and the Criminal Division did not search for them. Defs.' Resp. to Pl.'s

SMF ¶ 115.  Defendant does not—and cannot—explain how its refusal to search for those records is lawful under a *literal*, let alone liberal, reading of Plaintiff's request.  *Cf. Nation Magazine v. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (stating that agencies are obligated to construe "a FOIA request liberally").

Second, Plaintiff's request for electronic messages is all the more important *because* there was no consultation or authorization request made under the News Media Policy before the FBI questioned Carmody.  While the Criminal Division states that the "PSEU is not involved in the review or execution of state search warrants," Defs.' Reply at 4, that is irrelevant for the simple reason that the News Media Policy also applies to the *questioning* of members of the news media, which Defendants admit occurred with Carmody.  *Compare* 28 C.F.R. § 50.10(f)(1) (provision of News Media Policy concerning questioning members of the news media) *with* Defs.' Resp. to Pl.'s SMF ¶ 71.  Because the News Media Policy was not followed, it is essential for Plaintiff to have access to records showing, for example, communications generated both before and *after* Carmody's questioning and the ensuing public outcry, such as whether anyone within the Criminal Division sent an email requesting a review of what happened and why the News Media Policy was not followed.  It is likewise important to know if there were follow-up emails responding to those questions, including asserting (as the Criminal Division has here) that it did not need to follow the News Media Policy.  As the Supreme Court has recognized, "matters of substantive law enforcement policy . . . are properly the subject of public concern."  *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 766, n.18 (1989).  The Criminal Division's wholesale refusal to search for such records deprives Plaintiff and the public of their right to such records in this case.

Third, while the Criminal Division claims that Plaintiff is attempting to "dictate, through

search instructions, the scope of an agency's search[,]" Defs.' Reply at 3, that is simply not so. Plaintiff is *describing* the records it seeks, which is what FOIA *requires*. *See* 5 U.S.C. § 552(a)(3)(A) (requiring agencies to make any "reasonably described" records "promptly available" upon request). Accordingly, Defendants' reliance on *Mobley v. Cent. Intelligence Agency*, 806 F.3d 568 (D.C. Cir. 2015), is inapposite. In that case, the requester "sought 'all records in any way relating to, pertaining to, or mentioning [himself] by any and all persons or entities,'" *Mobley*, 806 F.3d at 573; then, "[o]ver a year later, Mobley's counsel sent two e-mails to the FBI . . . asking that it search *particular repositories* of analog and digital records." *Id.* at 574 (emphasis added). Here, in contrast, Plaintiff submitted a request to the Criminal Division seeking, *inter alia*, electronic communications containing certain keywords and emails exchanged between specific entities. Marshall Decl. Exs. 1, 3. In response, the agency decided *not* to conduct searches for those records, Pl.'s SMF, ECF No. 16-2, ¶¶ 91, 115, even though such a search is the *only* means by which to respond to items two and three of Plaintiff's request. *See* Marshall Decl. Exs. 1, 3. Plaintiff is not dictating the scope of the Criminal Division's search, it is simply seeking to ensure that the agency does not unilaterally *eliminate* significant portions of its request.

Because the Criminal Division's refusal to conduct a search for records requested by Plaintiff is a violation of FOIA, 5 U.S.C. § 552(a)(3)(A), summary judgment as to that agency should be granted to Plaintiff.

B.   The FBI unlawfully limited its search to the Central Records System.

Notwithstanding the overwhelming evidence establishing the flaws in the FBI's search methodology, *see* Pl.'s Mem. at 12–18, the agency insists it has complied with its obligations under FOIA, *see* Defs.' Reply at 8–12. It has not.

First, the FBI does not even bother to address Plaintiff's argument that a CRS index search is, *ipso facto*, an unreasonable method to locate the records requested in this case. *Compare* Pl.'s Mem. at 14, *with* Defs.' Reply. As Plaintiff noted, an index search does *not* search the full text of records, it *only* searches pre-populated terms that FBI officials choose. *See* Seidel Decl., ECF No. 15-3, ¶¶ 14–15, 23–24; *see also Shapiro v. Dep't of Justice*, 944 F.3d 940, 943 (D.C. Cir. 2019) (distinguishing between FBI index and full-text search methodologies). Accordingly, it is *impossible* to locate the emails and text messages Plaintiff requested through a CRS index search. *See* Marshall Decl. Ex. 3 (request asking for, among other things, emails and text messages containing keywords and/or between FBI and other entities). In other words, the FBI's search methodology was flawed from its inception, and does not show "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

Second, it is clear that limiting the search to the CRS as a general matter is inappropriate here because it is undisputed that the FBI *did not place* any of its emails regarding Carmody in the CRS. *See* Defs.' Resp. to Pl.'s SMF ¶¶ 85, 87–90, 97–101, 103–107. The FBI argues that if "there were relevant emails . . . they would have been serialized and placed in the CRS for recordkeeping and future retrieval and located through the search." Defs.' Reply at 20 (internal citations and modifications omitted). But the premise of that argument is disproved by the evidence Plaintiff has introduced, and which Defendants do not dispute: namely, responsive emails sent from or to the FBI email accounts for Special Agent Michael Eldridge, Sherman Kwok, and Penni Price, *see* Defs.' Resp. to Pl.'s SMF ¶¶ 98, 101, 103–106, 108—none of which were placed in the CRS or located by the FBI. *Id*. ¶¶ 85, 87–90, 97–101, 103–107. Indeed, it took a separate request from Plaintiff to the San Francisco Police Department to uncover these records. Pl.'s SMF ¶¶ 96–97.

Whether those emails were not placed in the CRS because the FBI considered them "transitory," *see* Defs.' Reply. at 9,[1] or for some other reason, is immaterial:   when a "request s[eeks] information that plainly was not contained within CRS . . . the FBI [cannot] put its head in the sand and ignore an obvious source for the requested material." *Jett v. Fed. Bureau of Investigation*, 139 F. Supp. 3d 352, 368 (D.D.C. 2015).   The FBI makes no effort, whatsoever, to address or distinguish *Jett*, the reasoning of which is fully applicable here. *See id.*; *cf. McClanahan v. Dep't of Justice*, 204 F. Supp. 3d 30, 44–45 (D.D.C. 2016) (holding FBI's search was reasonable when it searched CRS *and* email accounts, and located 90 additional pages of records in the email accounts), *aff'd sub nom. McClanahan v. Dep't of Justice*, 712 F. App'x 6 (D.C. Cir. 2018).   The FBI's email systems are, unsurprisingly, the "obvious source" for the emails requested by Plaintiff, and the agency must search them.

Third, the same responsive (but unlocated) FBI emails Plaintiff introduced are unambiguous "positive indications of overlooked materials," *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999), further establishing the deficiency of the FBI's search.   While the FBI notes that "identifying a handful of documents that an agency failed to uncover does not, in itself, demonstrate that a search was inadequate[,]" Defs.' Reply at 10, that is neither here nor there.   It would be a different story had the FBI conducted an email search and a responsive record fell through the cracks.   Instead, the FBI *ignored* entire portions of Plaintiff's request and refused to search for records responsive to them. *Compare* Marshall Decl. Ex. 3 *with* Defs.' Resp. to Pl.'s SMF ¶ 91.   Thus, the cases the FBI cites are inapposite. *See* Defs.' Reply at 10.   They presuppose that the agency conducted "thorough, reasonable, good-faith search[es]," *Wilbur v. Cent.*

---

[1] FOIA applies to all "agency records," no matter the label an agency may give them.  5 U.S.C. § 552(a)(4)(B).

*Intelligence Agency*, 355 F.3d 675, 676 (D.C. Cir. 2004), that were "reasonably calculated to uncover all relevant documents." *Boyd v. Criminal Div. of Dep't of Justice*, 475 F.3d 381, 390 (D.C. Cir. 2007).  In contrast, here, the evidence of overlooked materials Plaintiff has introduced establish that the FBI's search *methodology*—its refusal to search email systems *at all*—was fundamentally flawed.  That the FBI would argue Plaintiff should "submit a new FOIA request" to obtain email records, Reply at 10–11, is beyond the pale.  The FOIA request at issue in this lawsuit *explicitly* seeks specific "email correspondence."  Marshall Decl. Ex. 3.  Much as it might find it convenient to do so, the FBI cannot re-write Plaintiff's request to exclude those records.

Fourth, the record in this case contains "clear and certain" leads that the FBI ignored.  As an initial matter, the FBI's suggestion that it "determines the reasonable scope of any FOIA request[,]" Defs.' Reply at 11, is false.  The reasonableness of an agency's search is an objective inquiry decided by the Court *de novo*.  5 U.S.C. § 552(a)(4)(B); *DiBacco*, 795 F.3d at 188.  With respect to the rest of the FBI's arguments on this point, it is not merely Plaintiff's whim that the FBI search the San Francisco field office, *cf.* Defs.' Reply at 11;[2] there is a wealth of evidence in the record that "unmistakably establishes" that the San Francisco field office and specific FBI agents in that office were "intimately involved" in the subject of Plaintiff's request.  *Reporters Comm.*, 877 F.3d at 407.  Just as in *Reporters Committee*, Plaintiff's request here identified specific information showing specific agents in San Francisco were involved in the subject of the request.  Marshall Decl. Ex. 3.  And, as the FBI admits, in the process of its search it located a record conclusively establishing that the San Francisco field office was involved.  Defs.' Reply at 11.

---

[2] The D.C. Circuit has stated that if "a request *does not specify the locations* in which an agency should search, the agency has discretion to confine its inquiry to a central filing system *if* additional searches are unlikely to produce any marginal return."  *Campbell v. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998) (emphasis added).  In this case, Plaintiff specified locations the FBI should search.  *See* Marshall Decl. Ex. 3.

Thus, because an agency "must revise its assessment of what is 'reasonable' in a particular case to account for leads that emerge during its inquiry[,]" *Campbell*, 164 F.3d at 28, the FBI's failure to expand its search to that office was unreasonable.

The FBI's failure to expand its search beyond the CRS is particularly unjustifiable given that the FBI knew that Plaintiff requested emails and text messages, but located none in the CRS. The appropriate course of action would be to expand its search to the San Francisco field office, along with the email accounts of its personnel that the FBI's own records identified as those who questioned Carmody.  As was true in another case from this district involving the FBI's failure to search the emails of field office personnel, "the FBI's declarations do not explain how the individuals in the [] Field Office . . . would not have responsive records in their e-mail accounts." *Prop. of the People, Inc. v. Dep't of Justice*, 405 F. Supp. 3d 99, 122 (D.D.C. 2019).  The FBI makes no effort to address, let alone distinguish, *Property of the People* or *Reporters Committee*, both of which are fully applicable here.

Because the FBI has failed to conduct an adequate search for records, summary judgment should be entered in favor of Plaintiff.

## II.     EOUSA has failed to establish that it conducted an adequate search for records.

In its cross-motion, Plaintiff identified two deficiencies in the EOUSA's search for records: (1) it failed to set forth the search terms used in its search for electronic communications, and (2) it failed to introduce any evidence that any search of the records of the United States Attorney's Office for the Northern District of California ("USAO/NDCA"), in fact, took place.  *See* Pl.'s Mem. at 20–21.

In response, the EOUSA has, belatedly, identified the search terms used in *one* of its searches of the records of *one* former attorney.  *See* Decl. of Lester Pagtalunan, ECF No. 20-3, ¶

6. The EOUSA has also submitted a supplemental declaration from Ms. Mahoney with respect to the USAO/NDCA, but that supplemental declaration *still* does not identify (1) the search terms used by the attorneys in that office, if any, in searching for responsive records, or (2) whether any searches were actually conducted by those attorneys. Thus, the EOUSA's continued failure to provide that basic information precludes summary judgment in its favor.

With respect to search terms, it is well-settled that an agency must identify the search terms it used to be entitled to summary judgment. *See, e.g.*, *Reporters Comm.*, 877 F.3d at 403; *DiBacco*, 795 at 188; *Valencia-Lucena*, 180 F.3d at 326; *Oglesby*, 920 F.2d at 68; *see also Liounis v. Krebs*, No. 18-5351, 2019 WL 7176453, at *1 (D.C. Cir. Dec. 19, 2019) (vacating district court order holding agency's search was adequate when agency "did not specify the types of searches performed or the search terms used"). The EOUSA has failed to do so here. Neither Ms. Mahoney's initial nor her supplemental declaration identify what search terms the USAO/NDCA attorneys used (if any) to search for responsive records. *See* ECF Nos. 15-5, 20-2.

Further, with respect to identifying whether a search was even conducted, and if so, what the results were, the EOUSA's submissions likewise fail. Its citation to two reported and one unreported case from this District for the proposition that it need not explain to the Court or Plaintiff how its purported searches were carried out or what they produced, Defs.' Reply at 7, is incompatible with D.C. Circuit precedent making clear that an agency declaration must demonstrate that a search was, in fact, conducted.[3] *See, e.g.*, *Oglesby*, 920 F.2d at 68 (D.C. Cir. 1990) (ruling that agencies must aver "that all files likely to contain responsive materials (if such records exist) were searched"). Even if a search is conducted, a declaration providing no

---

[3] FOIA's plain text also defines a search as "to *review*, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request." 5 U.S.C. § 552(a)(3)(D) (emphasis added).

"indication of what each [component's] search specifically yielded" is inadequate to carry an agency's summary judgment burden. *Morley*, 508 F.3d at 1122 (D.C. Cir. 2007). Thus, for example, an agency declaration that simply states a particular office "was tasked with conducting a search" is insufficient. *Aguiar*, 865 F.3d at 738. Because there is simply no evidence in the record as to how or whether USAO/NDCA attorneys searched for responsive records, or what they produced, the EOUSA's motion must be denied.

To be clear, EOUSA can establish the methodology and results of its search in numerous ways. Plaintiff suggests that it would be far more efficient for the USAO/NDCA to search its email server or backups directly, instead of asking individual employees to search for records. *Cf.* Defs.' Reply at 7. But, however it conducts the search, the EOUSA must disclose its search terms and the results thereof. *See, e.g.*, *Aguiar*, 865 F.3d at 738; *Reporters Comm.*, 877 F.3d at 403. Where, as here, neither the Court nor Plaintiff have any evidence regarding the search terms the agency used, or whether the searches it "requested" were actually completed, summary judgment cannot be granted.

### III.   The FBI is unlawfully withholding the names of the two FBI agents who questioned Carmody.

The FBI has redacted the names of two special agents from the single record it has produced in this matter, citing FOIA Exemptions 6 and 7(C). However, the FBI continues to offer only bare, conclusory speculation in support of the purported privacy interests at stake, even though it *does not dispute* that Special Agent Michael Eldridge was one of the FBI agents who questioned Carmody. *See* Defs.' Resp. to Pl.'s SMF ¶ 72. The FBI also willfully disregards Congress's 2016 amendments to FOIA, which require the agency to demonstrate that it "reasonably foresees that disclosure would harm an interest protected by" the cited exemptions or that disclosure is prohibited by law. 5 U.S.C. § 552(a)(8)(A)(i). Finally, the FBI mischaracterizes the requirements

of the News Media Policy in an attempt to undermine the public's interest in knowing who violated the Justice Department's rules for questioning members of the news media.  For these reasons, the FBI must unredact the names of the two special agents who engaged in that questioning.

A.  Michael Eldridge's identity is in the public domain.

Plaintiff introduced evidence that FBI Special Agent Michael Eldridge was one of the agents who questioned Carmody.  Pl.'s SMF ¶ 72; Marshall Decl. Ex. 6.  The FBI does not dispute that evidence, or dispute that Special Agent Eldridge questioned Carmody.  Defs.' Resp. to Pl.'s SMF ¶ 72.  The FBI concedes that if "information withheld is identical to information available in the public domain" it cannot be withheld.  Defs.' Reply at 15–16 (citing *Fischer v. Dep't of Justice*, 596 F. Supp. 2d 34, 48 (D.D.C. 2009)).  Yet, the FBI still ignores the fact that Eldridge's identity as an agent who questioned Carmody is in the public domain.  *See* Marshall Decl. Ex. 6; *see also* Courtney Douglas, *FBI failed to follow Justice Department's news media guidelines when agents questioned San Francisco freelancer*, Reporters Committee for Freedom of the Press (July 7, 2020), https://perma.cc/L4EH-ELZC.  Thus, because "where information requested is truly public, [] enforcement of an exemption cannot fulfill its purposes[,]" Eldridge's name must be released.  *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999); *accord Davis v. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (government cannot assert exemption as to information that "is in the public domain") (citation marks and quotation omitted).

B.  The FBI has proffered inadequate and speculative privacy interests that are not supported by any evidence.

The FBI's supplemental declaration does not include any evidence to support its argument that unredacting the names of the two special agents who improperly questioned Carmody would harm their privacy interests; it merely rehashes the same speculative, boilerplate claims that "prejudice" or "harassing inquiries" "may" result from disclosure of the names of the agents.

13

Second Seidel Decl., ECF No. 20-4, ¶ 16.  That supposition is particularly unavailing in light of the foreseeable harm standard, which prohibits speculative averments of potential harm from being used to withhold information.  5 U.S.C. § 552(a)(8) (an agency shall "withhold information under this section *only*" if the agency "reasonably foresees that disclosure *would* harm an interest protected by" the exemption) (emphasis added).  And, contrary to the FBI's assertion, under the plain text of FOIA the foreseeable harm provision is fully applicable to Exemptions 6 and 7(C). *Id.*[4]

That the identity of one of the agents who questioned Carmody has been public for over half a decade belies the FBI's notion that any harm will result from the release of his and his colleague's names.  *See* Defs.' Resp. to Pl.'s SMF ¶ 73.  Indeed, the FBI's *own declarant* identifies Eldridge as a special agent.  Second Seidel Decl. ¶ 13 (referencing "email chain exchanges between Lieutenant Torres and FBI SA Eldridge").  Eldridge was also publicly identified as one of the agents who questioned Carmody more than two months ago, *see* Douglas, *supra*.  Although this information has been available for quite some time, the FBI fails to introduce *any* evidence that Eldridge has been subject to "harassing inquiries" or that there has been "prejudice [to his] effectiveness" in carrying out his duties, Second Seidel Decl. ¶ 13.  It is the FBI's burden to prove an exemption applies, not Plaintiff's burden to disprove.  *See Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 670 (D.C. Cir. 2016) (holding that "across-the-board" approach to withholding immigration judge's names "cannot be sustained in light of the variety of privacy and public interests that may be at stake").  In the absence of any reasonably

---

[4] The FBI's citation to *Reporters Committee for Freedom of the Press v. Federal Bureau of Investigation*, No. CV 15-1392 (RJL), 2020 WL 1324397 (D.D.C. Mar. 20, 2020), *appeal docketed* Apr. 5, 2020, is unavailing:  the court in that case engaged in no substantive evaluation of the requirements of the foreseeable harm standard as it applies to these exemptions and, in any case, its reasoning is inapplicable to the factual circumstances here.

foreseeable harm to any purported privacy interests, Defendants' invocation of Exemptions 6 and 7(C) is improper.

C.   <u>The public interest in knowing who violated DOJ policy overcomes any privacy interests that may exist.</u>

Even assuming, *arguendo*, that the FBI agents who questioned Carmody had any privacy interest in their names alone, it is overcome by the public's interest in knowing who violated the DOJ's rules.  *See* Pl.'s Mem. at 23–25.  The FBI attempts to discount this interest by claiming that the News Media Policy "does not apply" to the "execution of a state . . . search warrant."  Defs.' Reply at 15.  But that assertion fundamentally misstates both Plaintiff's position and the scope of the News Media Policy itself.  The violation here stems from the "unauthorized *questioning* of Carmody[.]"  Pl.'s Mem. at 24 (emphasis added).  Under the News Media Policy,

> No member of the Department [of Justice] shall subject a member of the news media to *questioning* as to any offense that he or she is suspected of having committed in the course of, or arising out of, newsgathering activities without first providing notice to the Director of the Office of Public Affairs and obtaining the express authorization of the Attorney General.

28 C.F.R. § 50.10(f)(1).  Indeed, Defendants do not dispute that such approval is required before questioning may take place.  Defs.' Resp. to Pl.'s SMF ¶ 66.  Because Defendants have made clear the News Media Policy was not followed before FBI agents questioned Carmody, *see* Defs.' Mem., ECF No. 15-1, at 6, there is more than sufficient evidence to warrant "belief by a reasonable person that [] Government impropriety might have occurred."  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004).

Disclosure of the names of the agents who improperly questioned Carmody will, in the first instance, more fully inform the public as to what occurred during that incident.  *Cf. Tax Reform Research Grp. v. Internal Revenue Serv.*, 419 F. Supp. 415, 418 (D.D.C. 1976) (noting the "obvious public interest in a full and thorough airing of the serious abuses that did in fact occur").

It will also allow Plaintiff and the public to engage in the kind of scrutiny of this incident that the FBI has been unwilling to conduct:  the Second Seidel Declaration affirms that there has been *no accountability* within the FBI for violating the News Media Policy.  Mr. Seidel avers that "[n]either of the agents whose names were redacted . . . were accused of, nor found to have engaged in, any misconduct in relation to . . . their attempts to interview the [sic] Mr. Carmody."  Second Seidel Decl. ¶ 19.  That makes the public interest in the names of these agents all the more important.  As the D.C. Circuit has explained, there is a public interest in "knowing *who* the public servants are that were involved in the governmental wrongdoing, in order to hold the governors accountable to the governed."  *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 92 (D.C. Cir. 1984);[5] *accord Bartko v. Dep't of Justice*, 898 F.3d 51, 69 (D.C. Cir. 2018) (noting the public interest under FOIA "crescendos when the misfeasance of a federal prosecutor with the power to employ the full machinery of the state in scrutinizing any given individual is at stake") (citation and quotations omitted).  This public interest overcomes any purported privacy interest that may adhere in these agents' names, especially since (as noted above) one of them is already public.

Because the FBI has improperly withheld information, summary judgment for the agency is improper as to those redactions and should be granted in favor of the Reporters Committee.

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court grant its partial motion for summary judgment, deny Defendants' motion for summary judgment, and order Defendants to produce all responsive, non-exempt records to Plaintiff.

---

[5] Unlike *Stern*, however, there is no evidence, and the FBI does not argue, that these agents' "derelictions were acts of negligence."  737 F.2d at 92.

Dated: August 27, 2020

/s/ Katie Townsend
Katie Townsend
DC Bar No. 1026155
Adam A. Marshall
DC Bar No. 1029423
Gunita Singh
DC Bar No. 1601923
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
Email: ktownsend@rcfp.org
Email: amarshall@rcfp.org
Email: gsingh@rcfp.org

*Counsel for Plaintiff*